THEODORE EDWARD SANTOS, III, AS ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MARIE SANTOS, PLAINTIFF-APPELLANT, v. THE ESTATE OF THEODORE EDWARD SANTOS, JR., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 8, 1986—Decided October 28, 1986.

Before Judges MORTON I. GREENBERG,[1] R.S. COHEN and GRUCCIO.

*Lawrence S. Grossman* argued the cause for appellant.

---

[1] Judge Greenberg did not participate in oral argument but with the consent of the parties, through counsel, has joined in this opinion.

*Michael D. Kirby* argued the cause for respondent (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys; *Michael D. Kirby,* on the brief).

The opinion of the court was delivered by:

GRUCCIO, J.A.D.

Plaintiff appeals from an order dismissing his complaint which was entered when his attorney refused to proceed to trial after the court limited his presentation to discovery depositions since his only live witness, who was attending college in California, was unable to be present in court that day. Plaintiff contends that the trial court committed an abuse of discretion by dismissing the case. We agree and reverse.

Plaintiff's complaint was filed on May 24, 1982. The gravamen of the complaint is that defendant, plaintiff's husband, while doing some work at home negligently placed a table on a stoop, which plaintiff fell over, injuring herself. The matter proceeded at a leisurely pace with defendant filing an answer about three and one-half months later, plaintiff's deposition being taken on September 21, 1983, and defendant's on February 23, 1984.

In August 1984, defendant killed his wife and then killed himself. Apparently, the court *sua sponte* placed the matter on the inactive list where it remained in limbo until April 1985, when an exchange of letters between counsel, with copies to the court, spurred a June trial listing, which was thereafter continued to August 1985. At that time, plaintiff's counsel explained that the sole witness, a child of the parties, was attending college in California. Since the case could not be settled, the assigned trial judge acceded to counsel's request that the matter be listed when the witness would be home during the holiday vacation period in January.

A further conference was called by the assignment judge for September 30, 1985, and a January 6, 1986, trial date was fixed. Four days later the assignment judge *sua sponte* advanced the

trial listing to November 18, 1985, and requested plaintiff's counsel to contact the witness to ascertain his availability on that date. After doing so, counsel wrote the assignment judge a letter which reads:

The last time we appeared in Court regarding the above entitled matter, on September 30, 1985, you indicated that the trial would be scheduled for January 6, 1986 with a preference. Your chambers subsequently called my office and indicated that the trial was being scheduled for November 18, 1985.

I immediately notified Michael Santos, the son of the deceased plaintiff and defendant, who is the witness, and who is presently in college in California. He has called to advise me that he will be back in New Jersey from December 21, 1985 through January 14, 1986 and it would be impossible for him to fly here from California for this trial.

I would, therefore, respectfully request that this matter be returned to the trial date of January 6, 1986 with a preference or, in the alternative scheduled for a date when Mr. Santos is here in New Jersey.

The letter was returned with a written note on it:

SPEEDY REPLY—10/18/85

In reply to your letter of 10/16/85 before I will consider your request please contact your adversary for his consent.

Defense counsel, who received copies of these letters, responded by letter dated October 22, 1985, as follows:

I do object to this case being scheduled beyond the present trial date of November 18, 1985.

This is a case that has a 1981 docket. I was against the adjournment that was given when the case was in the trial list on September 30, 1985. At that time counsel obtained a January trial date without any consent from this office. Subsequently I called this case to Your Honor's attention and particularly the age of the case and the fact that my office is being pressured to move it because of our client.

This is a case in which both plaintiff and defendant are deceased.

We want to move this case as quickly as possible and we definitely object to any rescheduling of the trial beyond the November 18, 1985 trial date.

Despite his letter request and the court's unilateral advancement of the case from its January 6, 1986, preference date, counsel for plaintiff was ordered to trial. There is no explanation or justification in the record for what appears to be a unilateral change of the judge's position without consultation with counsel. On November 19, 1985, the day the matter was assigned for trial, counsel again requested a return to the peremptory listing of January 6, 1986, so that he could properly

present his case to the jury. After again conferring with the assignment judge, the trial judge unsuccessfully attempted to negotiate a settlement and thereafter ordered plaintiff's counsel to proceed on the basis of discovery depositions. Counsel refused and the trial judge dismissed plaintiff's case.

Our discussion must begin with an expression of our firm disapproval of the manner in which plaintiff's rights were infringed upon in the management of his case and the dismissal his complaint.

Here, movement of plaintiff's case lay in a state of benign neglect from its filing in May 1982 until April 1985 when communications between counsel, with copies to the court, brought it to judicial attention. The first trial judge assigned to the case properly continued it for a listing when plaintiff's only living witness would be available to testify. On September 30, 1985, when a conference did not produce a settlement, the assignment judge recognized the witness problem and fixed a peremptory trial date of January 6, 1986. For reasons dehors the record, the case was relisted four days later for November 18, 1985, and was dismissed when plaintiff's attorney would not proceed without the witness to give testimony concerning the accident and the resultant injuries.

Defendant suggests that if plaintiff's counsel felt the testimony of his witness was important, he could have scheduled a *de bene esse* deposition. However, in light of the leisurely progress of this case and the date certain that was given, there is little merit in defendant's contentions. Indeed, we suggest a video tape deposition should have been considered by the court before dismissing the complaint.

A trial is a search for truth so that justice may be accomplished between parties unable to settle their differences. To assure that justice not be delayed, we must efficiently manage the litigation calendar while simultaneously affording litigants and their attorneys adequate time to prepare and try their cases. Here, the most basic rules of proper case management

were violated. Clearly, the movement of cases in the trial courts is properly left to the discretion of informed and dedicated presiding judges, trial court administrators and case managers who are under the supervision of the assignment judge. In pursuing that important goal, we, in the appellate court, recognize that:

> In the trial of a case questions at times arise to which no strict rule of law is applicable, but which from their nature and surrounding circumstances require the judgment of the court. These questions are to be determined by the court exercising its judicial discretion to further the ends of justice. Stated in general terms, "judicial discretion" means sound discretion, exercised not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law.

>     .     .     .     .     .     .     .     .

> Where a question which calls for the exercise of judicial discretion is properly presented, it is the duty of the court to consider and determine that question so that the rights of the parties may be fairly protected in an orderly manner. It is as much an abuse of judicial discretion in refusing to exercise such discretion when warranted by the facts before the court, as it is to exercise that discretion improperly by means of a decision that is clearly erroneous on the facts or under the law. [*Strzebinska v. Jary*, 58 *R.I.* 496, 193 *A.* 747, 748–749 (1937)].

Plaintiff's attorney, cognizant of his witness problem, sought and received a day certain which was unilaterally changed to his detriment. To compound matters, counsel was then ordered to proceed on discovery depositions or have his case dismissed.

The New Jersey judiciary is committed to a higher standard of justice. Indeed, in *Audubon Volunteer Fire v. Church Const. Co.*, 206 *N.J.Super.* 405, 407 (App.Div.1986), we pointed out many ways short of dismissal or default to deal with problems of calendar control. We clearly indicated:

> Until courts have exhausted means of performing their shepherding function which do not terminate or deeply affect the outcome of a case, they ought not to bar a litigant's way to the courtroom.

We fully recognize that there are times when the ultimate sanction of dismissal may be compelled by the documented actions of counsel or the litigants.

Here, the four surviving children of plaintiff have suffered the loss of their father and mother in a homicide-suicide. Whatever the value of the mother's accident case, they are

entitled to a date certain so that they may be fully prepared to proceed with their witness. In *Pepe v. Urban*, 11 *N.J.Super.* 385 (App.Div.1951), Judge Bigelow said:

We must never forget that courts exist for the sole purpose of rendering justice according to law. No eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case. *Id.* at 389.

*See also Allegro v. Afton Village Corp.*, 9 *N.J.* 156, 161 (1952). There is an absolute need to remember that the primary mission of the judiciary is to see justice done in individual cases. Any other goal, no matter how lofty, is secondary.

Judge Wilfred Jayne summed up our judicial responsibilities thusly:

We may suppose that the objects of the law are the same today as they were in the most rudimentary stages of its growth. Whether we think of the days when the prevalent thought was that might makes right or of the modern times when human insight and rationalization are regarded to be much more acute in the accomplishment of the purposes of the blind goddess, we cannot escape the conclusion that the object of all social laws is that the members of society shall be accorded the benefit of speedy, complete and exact justice.

It is exceedingly desirable, if not imperative, that in the disposition of the modern quantity of litigation, expedition must supplant languor, but never at the expense of justice. [*Amo v. Genovese*, 17 *N.J.Super.* 109, 110–111 (App. Div.1951)].

We who control the scales of justice must always keep them evenly balanced so that all who seek a resolution of their disputes before us receive the full measure of justice due them. In that quest for justice, let us always remember Judge Jayne's admonition, "expedition must supplant languor but never at the expense of justice." Indeed, there must be a partnership of the bench, the bar and the managers of our justice system so that each can properly fulfill its respective duties and obligations.[2]

---

2We note the unique Burlington Bar, Judiciary Compact signed by Assignment Judge Martin Haines and the Burlington County Bar Association which recognizes the need for joint participation in the management of the court system in the Burlington vicinage. Chief Justice Wilentz placed his imprimatur on this experiment subject to the clearly reserved, unconditional power of the assignment judge, as representative of both the chief justice and the

To satisfy this pledge of even-handed justice, this plaintiff must be afforded a reasonable opportunity to present his case. Nothing in this record convinces us that plaintiff here has forfeited that right.

Reversed and remanded for trial.

Supreme Court, to carry out judiciary policies. [Rosen, *Burlington Bar, Judiciary Sign Pilot Compact*, 117 N.J.L.J. 535 (May 1, 1986)].